UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROYCE EDWARD PEACOCK, II,

    Plaintiff,

v.                                      Case No. 8:13-cv-00108-T-17MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks this Court's review of the Commissioner's decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments. Plaintiff argues the administrative law judge ("ALJ") erred by failing to properly apply the treating physician rule and failing to properly assess Plaintiff's credibility. After considering the parties' briefs and the administrative record in this case, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

    *A. Standard of Review*

To be entitled to DIB or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's residual functional capacity ("RFC"), whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted).

The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*B. Background*

Plaintiff was forty-six years old at the time of his administrative hearing, has a high school education, and work experience as a commercial cooking service technician and a commercial cooking equipment sales representative (R. 47, 74, 177). He alleges he has been unable to work since September 10, 2005, due to cardiovascular disorders, lumbar spine impairment, hypertension, severe back pain, high cholesterol, and anxiety (R. 213). The ALJ agreed some of Plaintiff's alleged impairments were severe. Specifically, the ALJ found at step two and three of the sequential analysis that Plaintiff suffered from severe impairments of coronary artery disease, hypertension, degenerative disc disease, and obesity; however, none qualified as a listed impairment in C.F.R. Part 404, Subpart P, Appendix 1 (R. 21-22). At step four, the ALJ concluded that Plaintiff retained the RFC to perform light work with the ability to lift/carry twenty pounds occasionally and ten pounds frequently, stand, walk, and sit six hours in an eight-hour workday, push and pull an unlimited amount in his upper and lower extremities, frequently climb ramps and stairs, balance, kneel, crouch, crawl, and occasionally climb ladders, ropes, and scaffolds, and stoop (R. 23). With that RFC, the ALJ, aided by the testimony of a vocational expert, found Plaintiff was not prevented from performing his past relevant work as a commercial equipment and supplies sales representative (R. 27). Consequently, the ALJ concluded that Plaintiff was not disabled (R. 28). Plaintiff requested

review, and the Appeals Council, after reviewing additional information, denied Plaintiff's request for review (R. 1-3). Plaintiff, who has exhausted his administrative remedies, filed this action.

*C. Discussion*

In this appeal, Plaintiff raises two issues: 1) the ALJ failed to properly follow the treating physician rule when evaluating the medical opinions of Plaintiff's treating physicians, and 2) the ALJ failed to properly assess Plaintiff's credibility. I discuss each of these arguments below and conclude that the ALJ's decision is supported by substantial evidence.

*1. treating physician rule*

The first issue Plaintiff raises is whether the ALJ erred by failing to follow the treating physician rule when weighing the medical opinions of Plaintiff's treating physicians Drs. Ali and Findley. In support, Plaintiff maintains the ALJ improperly stated he that he gave Plaintiff's treating physicians "appropriate weight" without identifying any evidence to support his opinion. Plaintiff contends the ALJ's statement that Plaintiff's treating physicians' opinions were "inconsistent with the evidence or record when considered in its entirety" was conclusory and insufficient to establish that the ALJ's decision was supported by substantial evidence. Additionally, Plaintiff asserts the ALJ improperly relied on a non-examining state physician, Edmund Molis, who was not a licensed physician at the time his opinion was rendered; and thus, his opinion is not entitled to any weight. In rebuttal, the Commissioner argues the ALJ had good cause to discount Plaintiff's treating physicians' opinions as their opinions were inconsistent with the medical evidence as a whole. Furthermore, the Commissioner refutes Plaintiff's argument that Dr. Molis was unlicensed at the time he rendered his opinion and argues that even if true, the evidence Plaintiff used to support the fact that Dr. Molis was unlicensed was not material. Therefore, the Commissioner asserts remand

is unwarranted.

The testimony or opinion of a treating physician must be given substantial or considerable weight unless there is "good cause" not to. *Lewis v. Callaghan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists where (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records. *Id.* On the other hand, an "opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson v. Barnhart,* 138 F. App'x. 266, 269 (11th Cir. 2005). Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler,* 765 F.2d 1090, 1094 (11th Cir. 1985). And conclusory statements such as stating an "opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion." *Reynolds v. Comm'r of Soc. Sec.*, 6:10-CV-1682-ORL-GJK, 2012 WL 682462, at *12 (M.D. Fla. Mar. 2, 2012)*; see also Poplardo v. Astrue,* 2008 WL 68593, at *11 (M.D. Fla. Jan.4, 2008) (remanding when ALJ failed to specifically articulate evidence contrary to treating doctor's opinion). Finally, an ALJ must state with particularity the weight given to the treating physicians' opinions and failure to do so constitutes reversible error. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011).

### *i. Dr. Ali*

Dr. Ali has treated Plaintiff for his various heart conditions since 2005 (R. 992). At that time, Dr. Ali diagnosed Plaintiff with moderate coronary heart disease, mild to moderate LV systolic dysfunction, hypertension, and questionable syncopal episodes and dizziness (R. 509-510). In 2008,

after Plaintiff had undergone a cardiac catheterization, Dr. Ali found Plaintiff was temporarily disabled (R.481). Dr. Ali noted that Plaintiff had 50% left anterior descending coronary artery stenosis, 30% to 40% circumflex as well as 30% right coronary artery disease (*Id.*). He determined that Plaintiff's left ventricular ejection fraction was borderline low, that Plaintiff continued to suffer from angina, and had moderate left carotid artery disease of up to 30% to 50% severity by magnetic resonance angiography (*Id.*). Interestingly, Dr. Ali noted that Plaintiff was doing well from a cardiac standpoint and that prior symptoms of numbing in both Plaintiff's lower and upper extremities had almost resolved (R. 478). Plaintiff has also stated that he felt better at times, with no chest pain, no syncopal episodes, and there was no ischemia[1] (R. 504). Dr. Ali diagnosed Plaintiff with unexplained syncope[2] and stated that he was "perplexed by [Plaintiff's] history of recurrent syncope. [Yet felt] [i]t was likely that [Plaintiff] could be having episodes of ventricular arrhythmic leading to syncope." (R. 535). In 2009, after a loop recorder implant was inserted in Plaintiff to monitor his heart activity, Dr. Ali opined that since implantation Plaintiff had undergone frequent near-syncopal episodes, however, his recorder failed to reveal any irregular rhythm (R. 472). He assessed Plaintiff with mild to moderate coronary artery disease, mild left ventricle dysfunction, New York Heart

---

[1] Ischemia is a "deficient supply of blood to a body part (as the heart or brain) that is due to obstruction of the inflow of arterial blood (as by the narrowing of arteries by spasm or disease)." Merriam-Webster's Medical Dictionary, *Definition of Ischemia*, http://www2.merriam-webster.com/cgi-bin/mwmedsamp (last visited December 4, 2013).

[2] Syncope is a "loss of consciousness resulting from insufficient blood flow to the brain:FAINT." Merriam-Webster's Medical Dictionary, *Definition of Syncope*, http://www2.merriam-webster.com/cgi-bin//apps/apache/docs/cobrands/cgi-bin/mwmedsamp (last visited December 2, 2013).

Association Class II symptoms,[3] and a questionable history of unexplained syncope (R. 647). Nevertheless, Dr. Ali considered Plaintiff temporarily disabled for any kind of work but left open a final determination of disability until Plaintiff was evaluated by Dr. Dinesh Pubbi, another treating physician (*Id.*). After evaluation by Dr. Pubbi, Dr. Ali continued to find Plaintiff temporarily disabled and he recommended that Plaintiff not work (R. 777, 786-787). In a cardiac impairment questionnaire, Dr. Ali listed Plaintiff's prognosis as fair and determined that Plaintiff's chest pains, shortness of breath, fatigue, weakness, palpitations, dizziness, and sweatiness supported his diagnosis (R. 992). Dr. Ali opined that Plaintiff could sit for one or less hours, stand or walk one hour, occasionally lift or carry five or less pounds, and would be absent from work about two to three times a month, which would prevent Plaintiff from even sedentary work[4] (R. 994-995).

### ii. Dr. Findley

Dr. Findley has treated Plaintiff's back impairments since 2007. In his treatment notes, Dr. Findley assessed Plaintiff with lumbar disc herniation, but also noted that Plaintiff had normal extremities and joints. Other treatment notes revealed that at various times Plaintiff's motor strength varied from five out five, to four out of five, and three out of five (R. 797, 812, 818, 826, 832).

---

[3] Class II symptoms indicate mild symptoms which result in "slight limitation of physical activity. Comfortable at rest, but ordinary physical activity results in fatigue, palpitation, or dyspnea." Heart Failure Society of America, *NYHA Classification - The Stages of Heart Failure*, http://www.abouthf.org/questions_stages.htm (last visited December 2, 2013).

[4] "Sedentary work" is defined at § 404.1567 as:
> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 CFR § 404.1567(a).

Additionally, Plaintiff was observed as sometimes walking with a limp while on other occasions Plaintiff did not have a limp (R. 797, 804, 806, 808, 810, 812, 814, 832, 855). Dr. Findley also found that Plaintiff had tenderness and spasm in his lumbar spine (R. 846, 848). A CT of Plaintiff's lumbar spine revealed multilevel spondylosis with the most significant abnormality being present at the L4-L5 level where there is herniation of the nucleus pulposus demonstrating eccentricity to the left which in combination with the congenitally small central canal results in mild narrowing of the central canal (R. 580). In a lumbar spine impairment questionnaire, Dr. Findley diagnosed Plaintiff with lumbar disc herniation, lumbar facet arthropathy, lumbar disc disease, lumbar spinal stenosis, and right medial meniscus tear (R. 673). Accordingly, he found Plaintiff chronically partially disabled due to Plaintiff's limited range of motion in his right knee and back, tenderness in right knee and lower back, muscle spasms in knee and back, swelling in knee, abnormal gait, minimal changes in lower extremities three out of four, muscle atrophy in right lower extremities, muscle weakness in lower extremities, crepitus in right knee, trigger points in sacroiliac, knee, and thoracic spine, and positive straight leg testing left at 30 degrees and right at 20 degrees (R.673-74). Dr. Findley stated his findings were supported by Plaintiff's right knee MRI, lumbar disc herniation, lumbar facet arthropathy, lumbar disc disease, and lumbar spinal stenosis (R. 674). Dr. Findley opined that Plaintiff could only sit two out of an eight-hour workday, stand/walk four out of an eight-hour workday, must get up and move around every one hour, can lift occasionally up to twenty pounds, carry up to ten pounds, is capable of a low stress work environment, and would likely be absent from work more than three times a month (R. 677-78).

*iii. ALJ's evaluation of treating physicians' opinions*

The ALJ discussed the medical opinions of Drs. Ali and Findley. And, when weighing their

opinions, the ALJ stated he gave them appropriate weight (R. 27). He noted that both physicians had a treatment history with the Plaintiff; however, he found the physicians' opinions inconsistent with the evidence of record when considered in its entirety and with Plaintiff's activities of daily living (*Id.*). Consequently, the ALJ rejected Drs. Ali's and Findley's conclusions related to Plaintiff's RFC.

In doing so, the ALJ pointed out multiple inconsistencies in Dr. Ali's and Findley's assessments with other evidence in the record. For instance, the ALJ noted Dr. Ali's statement that Plaintiff was doing well from a cardiovascular standpoint, that a recent examination revealed no orthostatis, that his event monitor did not document any malignant arrhythmia, and that recent cardiovascular testing was relatively unremarkable (R. 24). He also noted that although Dr. Ali opined that Plaintiff was temporarily disabled from any kind of work, Dr. Ali had recorded at a follow-up visit that Plaintiff felt better with no chest pain, shortness of breath, or syncopal episodes, that his real implants showed no arrhythmia or pause, and that Dr. Pubbi stated no further work-up was needed (R. 24-25, 504). The ALJ pointed out that Dr. Ali had reported that Plaintiff's coronary artery disease was stable, that his loop recorder had not documented any significant cardiac arrhythmia, that Plaintiff's coronary artery disease was viewed as mild to moderate with mild left ventricle dysfunction and that Plaintiff's impairments were stable on medication (R. 25, 251,472, 506, 517). Moreover, the ALJ found Plaintiff's other physicians had noted mainly stable or normal results in their testing of Plaintiff's heart conditions (R. 26). For example, the ALJ found that during a hospitalization in August 2007, Plaintiff's physician recorded that there was no significant interval change, estimated stenosis was 30-50% and stable, left ventricular systolic function was normal with ejection fraction of 55% (R. 26, 413). Dr. Yazan Khatib reported that examination of Plaintiff revealed no ortostatis, Plaintiff's event monitor did not document any malignant arrhythmia, and recent cardiovascular testing was relatively unremarkable (R. 26, 502). Lastly, the ALJ noted that

a echocardiograph taken at another hospitalization in July 2010 revealed that Plaintiff's left ventricular function was grossly normal to low normal at 50%, his aortic valve appeared grossly normal, but was very poorly visualized, and left ventricular systolic pressure was about 32 with mild pulmonary hypertension (R.26-27, 862-866). Additionally, as to Dr. Findley's claims of chronic partial disability due to Plaintiff's back impairments, the ALJ noted that an MRI of Plaintiff's lumbar spine performed in April 2010 by Dr. Johnson revealed minimal broad based posterior bulging at L3-4, minimal midline focal protrusion at L4-5, and an otherwise unremarkable examination (R. 26, 761). A MRI of the thoracic spine revealed minimal degenerative disc disease at T7-8 with minimal posterior disc bulging (R. 26, 762). These inconsistencies in medical record with Dr. Ali's and Findley's findings constitute good cause to discredit their opinions.

In a related argument, Plaintiff next contends that the ALJ erred by giving some weight to the opinion of Dr. Molis who was not a licensed physician at the time Dr. Molis rendered his opinion regarding Plaintiff's RFC. Plaintiff points to a link on the Florida Department of Health's website, which provides evidence that Dr. Molis's license was suspended on February 2, 2007, for an indefinite period of time for allegedly obtaining controlled substances fraudulently (Pl's Br. p. 15, n. 36). The Court construes Plaintiff's argument as stating that the link provided by Plaintiff constitutes new evidence warranting remand of the ALJ's decision. In response, the Commissioner presents contrary evidence indicating that Dr. Molis's license was reinstated on October 6, 2008 (Def's Br. p. 14). The Commissioner argues that Dr. Molis rendered his opinion as to Plaintiff's RFC on December 3, 2009, after he was reinstated by the Florida Department of Health (R. 712). Consequently, the additional evidence is not material and does not warrant remand.

Under Section 405(g), a district court may remand a matter to the ALJ for rehearing if

presented with evidence not previously provided to the ALJ. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007). To prevail on a claim for remand, a claimant must show that (1) there is new, non-cumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative hearing. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001). "The new evidence must relate to the period on or before the date of the [ALJ's] decision." *See Russell v. Astrue*, No. 3:12-cv-160-CSC, 2012 WL 6101996, at *9 (M.D. Ala. Dec. 7, 2012) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999).

The link provided by Plaintiff does not satisfy these requirements. First, the evidence was dated prior to the ALJ's decision dated March 17, 2011, and was likely available for the ALJ's review before he rendered his decision. Plaintiff has not provided any reason why he failed to submit the evidence at the administrative hearing. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) (denying remand as to new evidence submitted by the plaintiff because plaintiff failed to provide cause for his failure to incorporate the evidence in the record during the proceedings before the ALJ). The Court also finds the evidence is not material. Although reliance on an a physician's opinion whose license was revoked or suspended by a State licensing authority is grounds for remand, Dr. Molis's license was not suspended at the time he rendered his opinion. *See* 20 C.F.R. § 404.1503a (stating that the Social Security program "will not use [] any individual or entity, except to provide existing medical evidence, … whose license to provide health care services is currently revoked or suspended by any State licensing authority."); *see also Renteria v. Colvin*, No. CIV 12-994-PHX-MHB, 2013 WL 4478698, at *10 (D. Ariz. Aug. 19, 2013)(finding it was not an error for

ALJ to discount opinion of State consultant whose license had been suspended indefinitely in another State). Given the evidence provided by the Commissioner concerning Dr. Molis's reinstatement, there is not a reasonable possibility that the link would change the administrative result. At most, it would likely only effect Dr. Molis's credibility. *See e.g. Clark v. Colvin*, CV 12-1116-RGA-MPT, 2013 WL 3834046, at *11 (D. Del. July 24, 2013)(holding new evidence of state examining physicians suspension was not material as it was unnecessary to develop the case factually and at most would affect the credibility of one physician) *report and recommendation adopted* by *Clark v. Astrue*, CV 12-1116-RGA, 2013 WL 4407880 (D. Del. Aug. 15, 2013). Accordingly, I find the link provided by Plaintiff is not new evidence warranting remand.

    *2. credibility determination*

Plaintiff next argues that the ALJ erred by failing to properly evaluate Plaintiff's credibility. Plaintiff asserts that the ALJ's finding concerning Plaintiff's credibility was insufficient as the ALJ mischaracterized Plaintiff's activities of daily living, failed to make clear how Plaintiff's smoking impacted his credibility, and the ALJ improperly used his lay observation at the hearing to conclude Plaintiff did not suffer from a significant disability.

The Eleventh Circuit has established a three-part "pain standard" that applies to claimants that attempt to establish a disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to his pain, the ALJ must articulate explicit and

adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562.

I find that the ALJ properly considered Plaintiff's subjective complaints of pain as required by the Eleventh Circuit and that his credibility determination is based on substantial evidence. The ALJ specifically considered Plaintiff's testimony that he experienced dizziness and lightheadedness three times daily that lasted 15-20 minutes, that he had chest pains and had to take nitrogylcerin four times per week, and that Plaintiff tried to walk for exercise, but felt tired (R. 25). The ALJ also noted Plaintiff's testimony that he suffered from shoulder pain, swelling in the knee, and back pain, that he could stand for only fifteen to twenty minutes, walk ten minutes, sit one hour, and lift ten pounds (R. 26). Additionally, the ALJ noted Plaintiff's testimony that Plaintiff's step-daughter moved into his home to help him with the children and that he was not alone with his two-year old during the day (*Id.*).

Notwithstanding, the ALJ concluded that the "claimant's medically determinable impairments could reasonably be expected to generally cause most of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the above [RFC]." (R.26). The ALJ articulated several reasons to support this conclusion. First, the ALJ found that Plaintiff's described activities of daily living were not limited to the extent that one would expect given his complaints (*Id.*). The ALJ found that Plaintiff had reported at some point during the proceedings that he was able to straighten up around the house, prepare simple meals, complete crossword puzzles, read, watch television, and walk and stretch for exercise (R. 26, 69-70, 627). And although

the ALJ appeared to credit Plaintiff's statement that his step-daughter moved in with his family to help, he also noted that at least until June of 2009, Plaintiff "was able to care for his two children at home (an infant and 7-year-old), which is quite demanding both physically and emotionally, without any particular assistance." (*Id.*). Second, the ALJ noted that the record revealed that Plaintiff's treatment had been generally successful in controlling Plaintiff's symptoms and that there was evidence in the file regarding non-compliance with treatment recommendations including that Plaintiff cease smoking.[5] Third, the ALJ found the medical evidence did not support Plaintiff's allegations of pain by noting that Plaintiff's physicians made relatively unremarkable or normal findings concerning Plaintiff's cardiovascular and back impairments and that Plaintiff had reported feeling well as discussed more throughly in the previous section of this Report (R. 26). Finally, the ALJ concluded that Plaintiff's generally unpersuasive appearance and demeanor while testifying at the hearing was inconsistent with Plaintiff's symptoms and limitations. Plaintiff, however, argues the ALJ improperly exercised "sit and squirm jurisprudence" when making this conclusion. Sit and squirm jurisprudence is defined as when "an ALJ who is not a medical expert will subjectively arrive

---

[5] Plaintiff argues that the ALJ's referenced to Plaintiff's failure to quit smoking to reject his subjective complaints is improper citing that *Shramek v. Apfel,* 226 F.3d 809 (7th Cir. 2000) and *Seals v. Barnhart*, 308 F.Supp.2d 1241(N.D. Ala. 2004) support his argument. In these cases, however, the Plaintiff's failure to quit smoking and non-compliance with treatment was central to the ALJ's refusal to credit Plaintiff's subjective complaints. *See id.* That is not the case here, the ALJ offered several other reasons beyond Plaintiff's failure to quit smoking to reject Plaintiff's subjective complaints. As such, any discussion of Plaintiff's failure to quit smoking was harmless. *See Gilmore v. Astrue*, No.309cv14/RV/EMT, 2010 WL 989635, at *20 (N.D. Fla. Feb. 18, 2010) (concluding the ALJ did not err in evaluating Plaintiff's subjective complaints as the ALJ did not discredit plaintiff's complaints based solely on the fact that plaintiff continued smoking); *see also King v. Astrue*, 5:07CV84/RS-EMT, 2008 WL 2038245, at *10 (N.D. Fla. May 12, 2008) ("An ALJ may properly consider noncompliance with medical advice in evaluating a claimant's credibility." ).

at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). I find no indication that the ALJ subjectively arrived at certain traits to reject Plaintiff's symptoms, but instead, relied on objective medical evidence and Plaintiff's statements of daily activities to arrive at his conclusion adding only that his demeanor was an additional factor deserving some slight weight. An ALJ is "not prohibited from considering the claimant's appearance and demeanor during the hearing." *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987)(finding the ALJ did not err by noting plaintiff's demeanor as a factor for discrediting plaintiff's testimony) (internal quotations omitted). Thus, the ALJ did not err by including Plaintiff's demeanor at the administrative hearing as a factor in rejecting Plaintiff's subjective complaints. *See id.* Accordingly, I find the ALJ properly discredited the Plaintiff's testimony and subjective complaints of pain.

   *D. Conclusion*

   For the foregoing reasons, it is hereby

   RECOMMENDED:

1. That the Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

2. That the Clerk is directed to enter judgment for the Commissioner.

   IT IS SO ORDERED in Tampa, Florida on December 10, 2013.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

cc: The Honorable Elizabeth A. Kovachevich